UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ALVIN R. BARNEY, II,

      Plaintiff,

v.                                       Case No. 3:17cv3-MCR-CJK

ESCAMBIA COUNTY, FLORIDA, et al.,

      Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter, in which plaintiff is proceeding *pro se*, is before the court on defendants' motions to dismiss (docs. 78, 80-82), plaintiff's motion for judgment on the pleadings against Jessica Cosby (doc. 67), and plaintiff's motion for summary judgment against Judge Patricia A. Kinsey (doc. 71). Having considered the motions and responses, the undersigned recommends defendants' motions be granted and plaintiff's motions be denied.

I.    Background

        Plaintiff names 7 defendants in his amended complaint (doc. 77) – Escambia

County, Florida; Steven Barry, Chairman of the Escambia County Board of County

Commissioners; David Morgan, Escambia County Sheriff; Todd Jerald Glaze and

Harry Green, Escambia County Sheriff's deputies; Patricia A. Kinsey, Escambia

County Circuit Judge; and Jessica L. Cosby, plaintiff's former girlfriend.  With the

exception of Judge Kinsey and Ms. Cosby, plaintiff sues the defendants in their

official capacities.  He sues Judge Kinsey in her individual capacity, and he sues Ms.

Cosby in both her individual capacity and her "official capacity as a private person."[1]

Doc. 77 at p. 3.   Plaintiff's claims stem from his arrest on charges of domestic

violence against Ms. Cosby, of which he ultimately was acquitted.  He contends he

was falsely and unlawfully arrested and imprisoned, maliciously prosecuted, and left

to "languish[]" in jail after excessive bail was imposed.  Doc. 77 at p. 4.

---

        [1] Plaintiff amended his complaint to sue Judge Kinsey in her individual capacity after the
undersigned entered a Report and Recommendation recommending plaintiff's claims against Judge
Kinsey be dismissed – in part, because plaintiff's claim for monetary damages against Judge Kinsey
in her official capacity is barred by the doctrine of sovereign immunity.  *See* doc. 4.  The district
judge adopted the Report and Recommendation but later vacated it, finding plaintiff's claims should
have been dismissed without prejudice in light of the fact plaintiff was entitled to amend his
complaint once as a matter of course.  *See* doc. 76.

II.    Discussion

A.    Standard of Review

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." While "'detailed factual allegations'" are not required, the plaintiff must present "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (*quoting Twombly*, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (*quoting Twombly*, 550 U.S. at 557).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (*quoting Twombly*, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  This "plausibility standard" requires a showing of "more than a sheer possibility" the defendant is liable on the claim.  *Id.*  The allegations of

the complaint must set forth enough facts "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  In other words, the complaint must contain sufficient factual matter, accepted as true, to permit a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.  When considering a motion to dismiss,"the court limits its consideration to the pleadings and exhibits attached thereto" and incorporated into the complaint by reference; *see Thaeter v. Palm Beach County Sheriff's Office*, 449 F.3d 1342, 1352 n.7 (11th Cir. 2006) (internal marks omitted); the court also accepts all factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff, *see Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).  However, the court need not credit "[t]hreadbare recitals" of the legal elements of a claim unsupported by plausible factual allegations because "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

  B.    Plaintiff's Claims

  Plaintiff asserts causes of action under 42 U.S.C. § 1983 and state law.  A viable claim under § 1983 requires plaintiff to establish two essential elements:

1.  the conduct complained of was committed by a person acting

under color of state law; and

2.   this conduct deprived plaintiff of rights, privileges, or

immunities secured by the Constitution or laws of the United States.

*Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds, Daniels v.*

*Williams*, 474 U.S. 327 (1986); *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303

(11th Cir. 2001).   Here, plaintiff invokes the Fourth, Fifth, Sixth, Eighth, and

Fourteenth Amendments, asserting claims for false arrest, false imprisonment,

malicious prosecution, excessive bail, and unlawful detention and restraint of liberty.

C.    Defendants' Motions

1.    Glaze and Green

Plaintiff sues defendants Glaze and Green in their official capacities as

Escambia County Sheriff's deputies, alleging they conspired together and with Cosby

to violate his "constitutional right to be free from false arrest, false imprisonment,

illegal detention, and malicious prosecution." Doc. 77 at p. 2.  Plaintiff claims he was

arrested without probable cause, pursuant to a report issued without oath or

affirmation.  Plaintiff maintains Glaze "did not present a written affidavit or sworn

complaint to committing magistrate or the prosecutor demonstrating probable cause

to believe that Plaintiff violated the criminal law of the State of Florida." Doc. 77 at p. 5. According to plaintiff, Deputy Glaze acted in bad faith and displayed a callous indifference to Plaintiff's constitutional rights when he (1) conducted a biased investigation against Plaintiff, (2) made deliberate false statements to establish probable cause, (3) filed false charges against Plaintiff, and (4) delivered false information to the prosecutor in the form of an unsworn police report." Doc. 77 at p. 5.

Defendants Glaze and Green have moved to dismiss plaintiff's claims against them for failure to state a claim upon which relief can be granted, arguing such claims are redundant of plaintiff's claims against Sheriff Morgan. Defendants Glaze and Green are correct – plaintiff's claims against them in their official capacities are treated as claims against the governmental entity they represent, which is the Escambia County Sheriff. As the Supreme Court explained, "[o]fficial-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (*citing Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against

the entity." *Id.* at 166. "It is not a suit against the official personally, for the real party in interest is the entity." *Id.* "Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself." *Id.* Because the Escambia County Sheriff is a party to this suit, plaintiff's claims against Glaze and Green are redundant and should be dismissed. *See, e.g., Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) ("Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly (provided, of course, that the public entity receives notice and an opportunity to respond).").

Although plaintiff seeks no damages from Glaze and Green, any claim for monetary damages against these defendants in their official capacities also would be barred by the doctrine of sovereign immunity. Absent waiver or express congressional abrogation, neither of which is present in this case, the Eleventh Amendment is an absolute bar to an individual's suit for monetary damages against

a state or its agencies, or against a state officer in his official capacity.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989).

2.      Sheriff Morgan

Plaintiff contends Sheriff Morgan "creat[ed] and embrac[ed] an existing policy or custom that caused the deprivation of Plaintiff's constitutional rights."  Doc. 77 at p. 2.  Specifically, plaintiff seeks to hold Sheriff Morgan liable for an alleged "unwritten" policy or custom that "allows sheriff deputies to make warrantless arrests based upon police reports that are not supported by oath or affirmation."  Doc. 77 at p. 2.  Plaintiff seeks "a declaration declaring the policy unconstitutional and an injunction prohibiting the Sheriff and his deputies from continuously violating the Constitution by making warrantless arrests that are not based upon probable cause supported by oath or affirmation."  Doc. 77 at pp. 2, 5.

"Subject matter jurisdiction in a declaratory judgment suit depends upon the existence of 'a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment,' and the plaintiff bears the burden of proving the existence of such a controversy throughout the litigation."  *Dow Jones & Co., Inc. v. Ablaise Ltd.*, 606 F.3d 1338, 1345 (Fed. Cir. 2010) (*quoting MedImmune, Inc. v. Genentech, Inc.*, 549

U.S. 118, 127 (2007)).  If no such controversy exists, subject matter jurisdiction is lacking.  *See, e.g., Allstate Ins. Co. v. Emp'rs Liab. Assurance Corp.*, 445 F.2d 1278, 1280 (5th Cir. 1971) ("The declaratory judgment remedy is an all-purpose remedy designed to permit an adjudication whenever the court has jurisdiction, there is an actual case or controversy, and adjudication would serve a useful purpose.").[2]

In order to obtain a preliminary injunction, plaintiff must show (1) a substantial likelihood of success on the merits of his claims; (2) irreparable injury unless the injunction issues; (3) the threatened injury outweighs whatever damage the proposed injunction may cause the defendants; and (4) if issued, the injunction will not be adverse to the public interest.  *See Am. Civil Liberties Union of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.,* 557 F.3d 1177, 1198 (11th Cir. 2009).  Because a preliminary injunction is an extraordinary and drastic remedy, the court may issue an injunction only if plaintiff clearly satisfies the burden of persuasion as to each of the four factors.  *Id.*  "Failure to show any of the four factors is fatal."  *Id.*

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Plaintiff's allegations of improper arrest fail to establish plaintiff is likely to suffer imminent, substantial, or irreparable injury, as required for declaratory or injunctive relief. *See Siegel v. LePore*, 234 F.3d 1162, 1176-77 (11th Cir. 2000) (emphasizing "the asserted irreparable injury 'must be neither remote nor speculative, but actual and imminent'" (*quoting Northeastern Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990)); *Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994) (stating that to obtain injunctive relief, a plaintiff must show "a real and immediate – as opposed to a merely conjectural or hypothetical – threat of future injury"); *Wolfer v. Thaler*, 525 F.2d 977, 979 (5th Cir. 1976) (noting that, for a declaratory judgment to issue, "there must be a substantial controversy of sufficient immediacy and reality between parties having adverse legal interests"). Absent contact with law enforcement, which is entirely speculative, plaintiff will not be subjected to the alleged offensive actions. The mere threat of contact is "not 'sufficiently real and immediate to show an existing controversy simply because [plaintiff] anticipate[s] violating lawful criminal statutes and being tried for the[ ] offenses . . . .'" *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983) (*quoting O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)). "It [is] to be assumed 'that [plaintiffs] will conduct their activities within the law and so avoid

prosecution and conviction as well as exposure to the challenged course of conduct said to be followed by petitioners.'" *Id.* (*quoting O'Shea*, 414 U.S. at 497).   In addition, with respect to injunctive relief, plaintiff has an adequate remedy at law—an action for damages against Sheriff Morgan for the alleged constitutional violation. Plaintiff thus has failed to allege facts that could give rise to a viable claim for declaratory or injunctive relief against Sheriff Morgan.

### 3.    Escambia County and Steven Barry

Plaintiff seeks to hold Escambia County and Mr. Barry liable for the alleged actions of Sheriff Morgan, Deputy Glaze, Judge Kinsey, and Ms. Cosby.  For the reasons set forth above, plaintiff's claims against Barry in his official capacity are due to be dismissed because the claims effectively are claims against Escambia County, which also is a party.  Moreover, neither a municipality nor its officers can  be held liable for the actions of employees under § 1983 based on a theory of vicarious liability or *respondeat superior*. *Connick v. Thompson*, — U.S. —, 131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011) (*citing Monell*, 436 U.S. at 691, and *Canton v. Harris*, 489 U.S. 378, 392 (1989)).  Instead, a civil rights plaintiff suing a municipal entity under § 1983 must show that (1) "his constitutional rights were violated"; (2) the county "had a custom or policy that constituted deliberate indifference to that

constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). These requirements apply irrespective of whether the plaintiff seeks monetary relief or prospective relief such as an injunction or a declaratory judgment. *Los Angeles Cnty., Cal. v. Humphries*, — U.S. —, 131 S. Ct. 447, 449, 453-54, 178 L. Ed. 2d 460 (2010).

"A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality. . . . A custom is a practice that is so settled and permanent that it takes on the force of law." *Wayne v. Jarvis*, 197 F.3d 1098, 1105 (11th  Cir. 1999) (*quoting Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997)). Plaintiff must show that the county policy or custom was the "'moving force,'" *City of Canton, Ohio v. Harris*, 489 U.S. at 378, 389 (1989) (*quoting Monell*, 436 U.S. at 694, and *Pollk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981)), that "actually caused" the alleged constitutional violation. *McElligott v. Foley*, 182 F.3d 1248, 1259 (11th Cir. 1999); *Young v. City of Augusta, Ga.*, 59 F.3d 1160, 1171 (11th Cir. 1995).

To establish a county policy, plaintiff may identify either (1) an officially promulgated county policy or (2) an unofficial custom or practice of the county shown through the repeated acts of a final policymaker for the county. *Glech v.*

*Clayton Cnty.*, 335 F.3d 1326, 1329-30 (11th Cir. 2003) (*citing Monell*, 436 U.S. at 690-91, 694; *Brown v. Neumann*, 188 F.3d 1289, 1290 (11th Cir. 1999) (*citing City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988)). With respect to the latter option, a municipality's failure to correct the constitutionally offensive actions of its employees can rise to the level of a custom or policy "if the municipality tacitly authorizes these actions or displays deliberate indifference" toward the misconduct. *Griffin, supra* (*citing Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987)). Because a county rarely will have an officially-adopted policy of permitting a particular constitutional violation, most plaintiffs must show the county has a custom or practice of permitting certain actions and the county's custom or practice is the moving force behind the constitutional violation. *Glech*, 335 F.3d at 1330 (internal quotations omitted); *Holmes v. Kucynda,* 361 F.3d 1069, 1078 (11th Cir. 2003).

Plaintiff has not alleged Escambia County had a policy, custom, or practice that resulted in a violation of his constitutional rights. Plaintiff has identified one alleged constitutionally offensive policy, custom, or practice, and he attributes that alleged policy, custom, or practice to Sheriff Morgan. Plaintiff has not alleged Escambia County officially promulgated an offensive policy or that any county official was

even aware of, much less condoned, any such policy, custom, or practice. As a result, plaintiff has failed to plead a viable claim against Escambia County and Mr. Barry.

       4.    Judge Kinsey

Plaintiff says he appeared before Judge Kinsey on November 8, 2015, for an initial appearance on domestic violence charges. At that time, according to plaintiff, Judge Kinsey "proceeded to make a probable cause determination finding probable cause to hold [him] over to answer to the charges." Doc. 77 at p. 4. "[W]ithout conducting a bail hearing," Judge Kinsey "set bail at $160,000.00, after determining that Plaintiff was indigent." *Id.* Plaintiff complains "Defendant Kinsey did not consider the required factors for setting bail under Florida law during the course of the pretrial proceedings," and he "was returned to jail because he was unable to post bond due to his indigency." *Id.* Plaintiff asserts Judge Kinsey violated his right to be free from excessive or unreasonable bail and imposed "unlawful detention and restraint on Plaintiff's liberty." Doc. 77 at p. 2.

Plaintiff further avers Judge Kinsey "creat[ed] or embrac[ed] an existing policy or custom that caused the deprivation of Plaintiff's constitutional rights." Doc. 1 at p. 2. Specifically, plaintiff alleges a policy that "allows committing judges to make pretrial probable cause determinations that are not based upon probable cause

supported by oath or affirmation." *Id.* He seeks "a declaration declaring the policy unconstitutional and an injunction prohibiting Defendant Kinsey and other committing judges from continuously violating the Constitution by making probable cause determinations that are not based upon probable cause supported by oath or affirmation." *Id.* He also seeks compensatory and punitive damages against Judge Kinsey in her individual capacity.

For the reasons set forth above, plaintiff has not alleged facts giving rise to a plausible claim for declaratory or injunctive relief. Moreover, although plaintiff asserts claims against Judge Kinsey in her individual capacity, the conduct of which plaintiff complains – Judge Kinsey's probable cause determination and imposition of bail – are functions normally performed by a judge and, in this instance, were performed by Judge Kinsey in her official/judicial capacity. Under Florida law, state circuit judges have exclusive original jurisdiction to hear and determine matters of domestic violence. *See* Fla. Stat. § 26.012(2).

As the undersigned previously explained, a judge acting in her judicial capacity is absolutely immune from suit for monetary damages. *See Mireles v. Waco*, 502 U.S. 9, 11 (1991) ("Judicial immunity is an immunity from suit, not just from ultimate assessment of damages.") (*citing Mitchell v. Forsyth*, 472 U.S. 511, 526-27 (1985));

*Dennis v. Sparks*, 449 U.S. 24, 27 (1980); *Sibley v. Lando*, 437 F.3d 1067, 1071 (11th Cir. 2005). Immunity may be overcome only (1) where the judge has not acted within her judicial capacity, or (2) where the judge's actions, though judicial in nature, are taken in the complete absence of all jurisdiction. *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978); *Mireles*, 502 U.S. at 11; *Forrester v. White*, 484 U.S. 219, 227 (1988).

"Whether a judge's actions were made while acting in h[er] judicial capacity depends on whether: (1) the act complained of constituted a normal judicial function; (2) the events occurred in the judge's chambers or in open court; (3) the controversy involved a case pending before the judge; and (4) the confrontation arose immediately out of a visit to the judge in h[er] judicial capacity." *Sibley*, 437 F.3d at 1070 (*citing Scott v. Hayes*, 719 F.2d 1562, 1565 (11th Cir. 1983)). An act is done in "clear absence of all jurisdiction," for judicial immunity purposes, if the matter upon which the judge acted is clearly outside the subject matter jurisdiction of the court over which she presides. *Dykes v. Hosemann*, 776 F.2d 942, 946-47 (11th Cir. 1985) (citations omitted).

The term "jurisdiction," as it applies to judicial immunity, means the "judicial power to hear and determine a matter, not the manner, method, or correctness of the exercise of that power." 48A C.J.S. Judges § 86. Thus, a judge is not deprived of

absolute immunity from liability for damages because an action she took was in error, illegal, or done maliciously, or was in excess of her authority.  *Stump*, 435 U.S. at 355-57; *see also Mireles*, 502 U.S. at 11 (judicial immunity is not overcome by allegations of bad faith or malice).  A judge is subject to liability only when she acted in clear absence of all jurisdiction and knew or must have known she was acting in such a manner.  *Simmons v. Conger*, 86 F.3d 1080, 1084-85 (11th Cir. 1996) (*citing Stump*, 435 U.S. at 356-57).  Where a court has subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes.  *Harper v. Merckle*, 638 F.2d 848 (5th Cir. 1981) (judicial immunity extends to all judicial acts provided they do not fall clearly outside the judge's subject matter jurisdiction).

Here, Judge Kinsey plainly was acting in her judicial capacity when she committed the acts of which plaintiff complains.  And, contrary to plaintiff's assertion, she clearly had jurisdiction over the matter.  Accordingly, Judge Kinsey is immune from this suit for monetary damages, and plaintiff's claims against her should

be dismissed.[3]  To be clear, judicial immunity forms the basis for dismissal as to the

claims against Judge Kinsey, not merely failure to state a cause of action.

> D.     Plaintiff's Motions

> > 1.     Ms. Cosby

Plaintiff sues Ms. Cosby, who also is proceeding *pro se*, in both her individual

and official capacities "as private person for conspiring with Defendant Glaze and

Green to violate Plaintiff's constitutional right to be free from false arrest, false

imprisonment, illegal detention, and malicious prosecution."   Doc. 77 at p. 3.

Plaintiff has moved for judgment on the pleadings against Ms. Cosby based on the

fact Ms. Cosby did not specifically deny in her answer all the factual allegations set

forth in the complaint.  Although Ms. Cosby, in fact, did not specifically deny all of

plaintiff's allegations, plaintiff has wholly failed to allege facts showing Ms. Cosby

is subject to liability under § 1983.

As set forth above, a § 1983 claim can be maintained only against a person

acting under color of state law.  *See Griffin*, 261 F.3d at 1303.  "A person acts under

---

[3] As Judge Kinsey noted in her motion, plaintiff's claims fail for the additional reason that, under Florida law, law enforcement and corrections officers may administer oaths while engaged in the performance of official duties.  *See* Fla. Stat. § 117.10(2).  Defendant Glaze signed the Statement of Probable Cause/Narrative section of the police report at issue under oath and swore to it before a corrections officer, in compliance with § 117.10(2).

color of state law when he acts with authority possessed by virtue of his employment with the state." *Id*. "[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (internal quotations omitted). Only in rare circumstances may a private party be viewed as a state actor for § 1983 purposes:

> [T]o hold that private parties . . . are State actors, th[e] court must conclude that one of the following three conditions is met: (1) the State has coerced or at least significantly encouraged the action alleged to violate the Constitution (State compulsion test); (2) the private parties performed a public function that was traditionally the exclusive prerogative of the State (public function test); or (3) the State had so far insinuated itself into a position of interdependence with the private parties that it was a joint participant in the enterprise (nexus/joint action test).

*Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001) (internal quotations omitted).

Although plaintiff purports to sue Ms. Cosby in her official capacity, he has not identified any official position Ms. Cosby has ever held.[4] In other words, plaintiff has not alleged Ms. Cosby acted under color of state law or otherwise was a state actor. Plaintiff thus has failed to plead a viable § 1983 claim against Ms. Cosby.

---

[4] Plaintiff alleges Ms. Cosby was homeless when he met her – a status not consistent with an official capacity claim.

Case No. 3:17cv3-MCR-CJK

"[A] district court has the inherent power to dismiss an action that is 'so patently lacking in merit as to be frivolous.'" *Guthrie v. U.S. Gov't*, 618 F. App'x 612, 617 (11th Cir. 2015) (*quoting Jefferson Fourteenth Assocs. v. Wometco de Puerto Rico, Inc.*, 695 F.2d 524, 526 & n.3 (11th Cir.1983)); *see also Davis v. Kvalheim*, 261 F. App'x 231, 234 (11th Cir. 2008) (affirming district courts' inherent authority to dismiss frivolous claims *sua sponte*). "A claim is frivolous if it is without arguable merit either in law or fact." *Bilal v. Driver*, 251 F.3d 1346, 1349 (11th Cir. 2001) (*citing Battle v. Central State Hosp.*, 898 F.2d 126, 129 (11th Cir. 1990)). Here, it is evident plaintiff has wholly failed to allege facts showing he is entitled to relief against Ms. Cosby under § 1983. It also is apparent plaintiff cannot cure the deficiency by amendment. *See* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief[.]"); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

2.    Judge Kinsey

After filing his initial complaint, plaintiff filed a motion for summary judgment against Judge Kinsey (doc. 71). Plaintiff thereafter filed an amended complaint against Judge Kinsey, which rendered his pending summary judgment motion moot. Plaintiff neither renewed the summary judgment motion nor filed an amended motion. Even if plaintiff had renewed the motion or filed an amended motion on similar grounds, such motion would be due to be denied because plaintiff has failed to state a claim for declaratory or injunctive relief and Judge Kinsey is immune from liability for plaintiff's damages claims.

IV.    Conclusion

For the reasons set forth above, the undersigned finds plaintiff has failed to state a viable § 1983 claim against any of the defendants. The claims are all frivolous, and cannot be cured by further amendment. The undersigned also recommends the court should decline to exercise supplemental jurisdiction over plaintiff's state law claims.

Accordingly, it is respectfully RECOMMENDED:

1.    That defendants' motions to dismiss (docs. 78, 80, 81, and 82) be GRANTED and that plaintiff's claims against Escambia County, Florida; Steven Barry; David Morgan; Todd Gerald Glaze; Harry Green; and Patricia A. Kinsey be DISMISSED WITHOUT PREJUDICE.

2.    That plaintiff's motion for judgment on the pleadings against Ms. Cosby (doc. 67) be DENIED and plaintiff's claims against Ms. Cosby DISMISSED WITHOUT PREJUDICE for failure to state a claim upon which relief can be granted.

3.    That plaintiff's motion for summary judgment against Judge Kinsey (doc. 71) be DENIED.

4.    That all other pending motions be DENIED as moot.

5.    That the clerk of court be directed to close the file.

At Pensacola, Florida this 30th day of May, 2018.

/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* U.S. Ct. of App. 11th Cir. Rule 3-1; 28 U.S.C. § 636.**